NAOMI LEWANDOWSKI, Adm'r of the Estate of John Kedzior, Deceased, Plaintiff-Appellant, v. GARY R. BAKEY, Defendant-Appellee.

(No. 74-134;

Second District (1st Division)—September 26, 1975.

Robert J. Rafferty, of Chicago, for appellant.

John P. Callahan, of Brady, McQueen, Martin, Callahan & Collins, of Elgin, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The administrator of the estate of John Kedzior, deceased, sued to recover damages arising from the death of the minor decedent who was struck by an automobile driven by the defendant Gary R. Bakey. Both negligent and wilful and wanton misconduct were alleged in separate counts. The court struck the wilful and wanton count and judgment was entered on the jury's finding for the defendant on the count charging negligence. Plaintiff appeals from the order striking the wilful and wanton count, and from the judgment on the negligence count. She contends that the evidence was sufficient to go to the jury on the issue of wilful and wanton misconduct and that prejudicial argument of defense counsel deprived the estate of a fair trial on the negligence issue.

We conclude that the evidence which bears on the question of liability does not create a triable issue of wilful and wanton misconduct and that the trial court properly removed that question from the jury.

The testimony showed that John Kedzior was about 14 years of age at the time of the accident on January 31, 1972. On that date at approxi-

mately 7:30 p.m. John Kedzior, together with two of his friends, entered Helm Street at its intersection with Sioux Street in Carpentersville and began walking in a generally westerly direction. Helm Street is a two-lane highway about 20-25 feet wide and runs in a generally east and west direction. It is a straight and level street. At the intersection of Sioux and Helm the speed limit on Helm drops from 35 to 30 miles per hour. There is a street light at this intersection and one further west at Delaware Street which is the first intersecting street west of Sioux on Helm described as "a long block apart."

There are no sidewalks on either side of Helm Street between Sioux and Delaware. On the north side of Helm Street there is curbing, although the grass grows up to the side of the street. On the south side of Helm Street there is a slough or swamp area, and bushes and trees grow close to the edge of the road. There is no pathway on that side of the street.

On the evening in question, the weather was clear and there was no snow falling. There was, however, snow on the ground, and there were patches of ice and snow on Helm Street.

At about 8 p.m. the boys were walking in a westerly direction on Helm Street side by side. John Kedzior was on the pavement of Helm Street and 1½ to 2 feet south of the curb bordering the north side of the street. He was wearing a blue cap, jacket and pants and beige shoes. His friends were walking to the north of the curb. There was no pushing, shoving or sudden movement on the part of the boys and nothing had been said to John by either of his companions on the subject of his walking on Helm Street pavement.

As the boys walked west on the north side of Helm Street John was struck by an automobile which was also traveling in a westerly direction. The vehicle was being driven by the defendant who was a Carpentersville police officer with about 4 years of service. The car had its lights on. The driver did not sound his horn at any point prior to hitting the decedent.

The evidence showed that the accident occurred about 100-170 feet west of Sioux Street. As a result of the impact the windshield of officer Bakey's car was broken and John's body was thrown 5 to 10 feet north of the curb. John also lost one of his shoes.

There was testimony that the right front wheel of the defendant's car left a 66-foot skid mark, that the right rear wheel left a 39-foot skid mark, and that the left wheels of the car left no skid marks. The skid marks appeared entirely on the roadway pavement at all times and not on the curb or shoulder. There was testimony that the defendant's vehicle traveled a distance of four houses after striking the decedent.

At the close of all the evidence the trial judge struck the wilful and

wanton count. The jury rendered a verdict for the defendant on the negligence count and answered a special interrogatory finding the decedent guilty of contributory negligence.

Plaintiff first contends that the evidence, taken in its aspect most favorable to the plaintiff under the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510 (1967)) was sufficient to form an issue of wilful and wanton conduct for the jury.

■■ The traditional definition of wilful and wanton misconduct is conduct which is either intentional or committed "under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of an impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care." (*Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583 (1946); *Klatt v. Commonwealth Edison Co.*, 33 Ill.2d 481, 488 (1965); *cf. Hocking v. Rehnquist*, 44 Ill.2d 196, 201 (1969).) The question is usually one of fact for the jury. A verdict may be directed on the issue, however, when the evidence viewed in its light most favorable to the plaintiff does not tend to show wilful and wanton conduct. See *Scarlette v. Hummer*, 41 Ill.App.2d 138, 143 (1963); *Murphy v. Vodden*, 109 Ill.App.2d 141, 149-50 (1969); *Hatfield v. Noble*, 41 Ill.App.2d 112, 117-18 (1963).

It is undisputed that the decedent was walking with his back toward traffic on the paved portion of the street and was wearing dark clothing; [1] that there were patches of ice and snow on the street, that it was a dark night and that the light from the nearest street fixture did not reach the area. It is also undisputed that defendant did not sound his horn at any time; that the speed limit in the area was 30 miles per hour; and that defendant was driving with his headlights on.

Plaintiff principally argues that there are circumstances from which the jury could have found defendant guilty of wilful and wanton conduct. She suggests that an inference of excessive speed may be properly drawn from the fact that defendant's vehicle left 66 feet of skid marks from the right front tire and 39 feet of skid marks from the right rear tire with no skid marks from the left tires; that after the impact the windshield of defendant's car was cracked and John Kedzior's body was thrown 5 to 10 feet north of the curb and one of his boots was loosed from his foot; and that after the impact the automobile traveled an estimated distance of 120-150 feet.

---

[1] Plaintiff does not attack the jury's finding, in answer to the special interrogatory, that plaintiff was guilty of contributory negligence.

■■ It is established that speed alone cannot be the basis for wilful and wanton conduct especially where the evidence does not permit judgment as to the rate of speed involved. (*Tanenbaum v. Loveless,* 16 Ill.App.3d 104, 110 (1973); *Breslin v. Bates,* 14 Ill.App.3d 941, 949 (1973).) Rather, speed is only significant as a circumstance to show wilful and wanton conduct as a part of total facts indicating an entire disregard for the safety of others. (See *Smith v. Polukey,* 22 Ill.App.2d 238, 247 (1959); *Pittman v. Duggan,* 336 Ill.App. 502, 508 (1949). See also *Streeter v. Humrichouse,* 357 Ill. 234, 240 (1934).) Here, the only evidence of excessive speed is the skid marks and no testimony was given which estimated the speed of defendant's vehicle based on those marks.[2]

There is therefore insufficient evidence from which the jury could find a conscious indifference to a known danger or a reckless disregard for the safety of others. A conclusion to the contrary would be based upon almost pure conjecture, which may not be basis for a finding of wilful and wanton misconduct. See *Makas v. Pagone,* 6 Ill.App.3d 532, 535 (1972).

Plaintiff next contends that the closing argument of defense counsel was improper and prejudicial and thereby deprived her of a fair trial.

Under section 2 of "An Act in regard to evidence  *  *  *" (Ill. Rev. Stat. 1973, ch. 51, par. 2) the defendant was not a competent witness in his own behalf to testify to any facts preceding the death of John Kedzior. During the trial, defendant was placed on the stand, gave his name and address, testified that he was a married man with children and was then asked about the facts of the accident by his attorney. Plaintiff's counsel objected. The court sustained the objection and defendant left the stand. An instruction was given to the jury at the close of the trial stating the pertinent provisions of the Evidence Act.

During defense counsel's final argument to the jury he commented on defendant's inability to testify and linked it to the objection which had been made by plaintiff's attorney. A relevant portion of the closing argument includes the following:

"[Defendant's Counsel]: Now, they say that the law says that

---

[2] See *Rowe v. Frazer,* 83 Ill.App.2d 367, 377 (1967), where emergency stopping at 45 miles per hour leaving skid marks on dry pavement of 57 feet was held insufficient to show wilful and wanton misconduct. In *Clifford v. Schaefer,* 105 Ill.App.2d 233, 244 (1969), an emergency stop at 45-55 miles per hour yielded 50-55 feet of skid marks on a dry pavement and this was held not to be evidence of wilful and wanton misconduct. There is no basis for the argument of plaintiff's counsel that the skid marks from both the right front and right rear wheels should be added together to determine the length of the skid.

Gary Bakey can't testify. Well, they objected to Gary Bakey testifying—

[Plaintiffs' Counsel]: I object to that, your honor.

THE COURT: Well, the Court will give an instruction on that issue, and so, proceed, \* \* \*.

[Defendant's Counsel]: Thank you, Your Honor. Gary Bakey was here on the stand to testify, an objection was made. And the Court is going to tell you what the law is in that regard.

But in any event we are trying this case with one hand tied behind our back—

[Plaintiff's Counsel]: I object to that, Your Honor. I have a motion to make.

THE COURT: That's sustained. Proceed, \* \* \*."

And at a further point, the argument:

"[Defendant's Counsel]: He also—I think you'll have an instruction that he should have blown a horn, Gary Bakey should have. Again, he hasn't testified, so I don't know about that—

[Plaintiff's Counsel]: I object, Your Honor, to these continuous references to Mr. Bakey's testimony. The law prohibits him—

[Defendant's Counsel]: The law prohibits it if an objection is made, Your Honor.

[Plaintiff's Counsel]: The law prohibits—

THE COURT: Gentlemen, please, proceed."

■■ It is, of course, improper for counsel to argue that a witness was not permitted to testify due to plaintiff's objection thereby attempting to convey to the jury that the witness had material and valuable evidence to give but was denied the opportunity because of the technical objection. And in a clear case of prejudice this may be ground for reversal. (See *Crutchfield v. Meyer*, 414 Ill. 210, 214 (1953).) In this case, however, there was the testimony of the two other boys concerning the contributory negligence of the decedent and the plaintiff has not raised the issue that the answer to the special interrogatory finding the decedent guilty of contributory negligence is against the manifest weight of the evidence. Thus we cannot say that this is a clear case of an improper argument affecting the verdict.

■■ Moreover, the question of the objection of the competency of the defendant to testify as to the accident was first raised by plaintiff's attorney in closing argument when he said:

"Another subject I wish to bring up is the fact I'm sure a lot of you are angry with me for the reason that I objected to the Defendant Bakey testifying."

In addition, counsel referred to the fact that it was an imminently just law that prevented him from testifying and noted that "our best witness is dead." He further raised numerous questions regarding defendant's behavior and implied that defendant really had no explanation for his conduct. A party cannot complain of argument which he originally interjected in the proceedings and to which he invited rebuttal. See *Crutchfield v. Meyer*, 414 Ill. 210, 214 (1953); *Lembeck v. Brady*, 78 Ill.App.2d 146, 152 (1966).

Plaintiff also complains of comments made by the defense counsel in closing which he claims reflected upon the fact that decedent's mother who had three children by her first marriage was divorced and subsequently remarried during which time she had two more children.

In view of the not guilty verdict it cannot be seriously contended that the plaintiff's argument as to the marital circumstances of the mother prejudiced a fair trial since the jury did not reach the question of damages.

We conclude that a reversal is not mandated because of the improper remarks of counsel.

For the reasons we have stated we therefore affirm the judgment of the trial court.

Affirmed.

GUILD and HALLETT, JJ., concur.