HERMAN FERDINAND, Plaintiff-Appellant, *v.* YELLOW CAB COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 61180

Opinion filed September 7, 1976.—Rehearing denied October 14, 1976.

Sidney S. Altman and Goldberg and Goldberg, both of Chicago, for appellant.

Jesmer and Harris, of Chicago (Francis X. Riley, of counsel), for appellees.

Mr. JUSTICE BURKE delivered the opinion of the court:

This is an action for personal injuries sustained as a result of an automobile accident. The court, in a bench trial, entered judgment for the defendants after finding that the plaintiff was contributorily negligent and the defendants were not guilty of wilful and wanton misconduct. Plaintiff appeals contending that: (1) there was insufficient evidence to support the finding that he was contributorily negligent; (2) the evidence established that the defendants were guilty of wilful and wanton misconduct; and (3) the court conducted the trial unfairly by "taking over the trial" and making erroneous rulings on the materiality of evidence the plaintiff wished to introduce.

The accident took place at about 4 a.m. on the morning of June 29, 1970, at the intersection of State Street and Jackson Boulevard in Chicago, Illinois, when an automobile driven by the plaintiff and a taxicab owned by the defendant cab company and driven by their employee and co-defendant Elza Watson collided. The night was clear, the streets were dry and the intersection was illuminated by street lights. The plaintiff had been proceeding eastbound on Jackson and the defendant northbound on State in the process of making a right turn onto Jackson when the collision

occurred in or near that intersection. The plaintiff's complaint charged the defendants with both negligence and wilful and wanton misconduct.

Marshall Davies, an employee of the City of Chicago, Department of Streets and Sanitation, was called by the plaintiff. He produced various records and diagrams of the street plan and traffic signals located at the intersection of State and Jackson. He testified that at that intersection State Street had six lanes, three going south and three going north, and that Jackson was one way east and contained four lanes. There is an offset on Jackson whereby the boulevard east of State Street shifts 9½ feet (approximately one lane in width) to the north. This would require traffic on Jackson to veer 9½ feet north when crossing the intersection in order to remain in the same lane. There were traffic signals on all four corners. The signals facing eastbound traffic on Jackson (plaintiff's direction) and northbound traffic on State Street (defendant's direction) displayed red, yellow and green faces. Davies testified that during the last three seconds of the red light on Jackson the yellow light appears in conjunction with the red and during the last three seconds of the green light on State Street a yellow light appears. He stated that a yellow light would be displayed both on Jackson and State simultaneously for three seconds.

Plaintiff testified that he was proceeding at approximately 18 to 20 miles per hour eastbound on Jackson Boulevard and was driving in the right lane closest to the south curb. He remained in that lane up until the point of impact. He testified that the light for Jackson remained green right up to the time of impact. As he reached the crosswalk just west of State Street and was about to enter the intersection he observed the defendant's cab about 30 to 40 feet south of Jackson approaching the intersection at 20 to 25 miles per hour. He did not observe the cab again until just before the impact. He did not change lanes, sound his horn or apply his brakes at any time prior to the impact. The collision took place in the intersection. The left front portion of the defendant's cab struck the right front portion of the plaintiff's automobile followed by a second impact in which the right rear portion of his automobile was struck, apparently as the cars spun around. The plaintiff's automobile was pushed northeast up onto the sidewalk and came to rest against the corner of the Lytton Building.

The plaintiff's final witness was Chicago police officer Robert Shackleton who testified that he arrived on the scene about 10 minutes after the collision took place. The plaintiff's vehicle, he testified, was up against the corner of the Lytton building on the northeast corner of the intersection. There was debris in the intersection in the east lane of State and the second lane north of the south curb of Jackson. There were skid marks 5 or 6 feet in length leading from the debris to the northeast corner of the intersection where the plaintiff's car had come to rest and skid marks 45 feet long in the easternmost lane of State Street extending 10 feet

into the intersection to where the debris was located. The defendant's cab was pulled over to the curb when the officer arrived. The damage he observed to the two vehicles was concentrated on the front and right side to the plaintiff's vehicle and the front and left side of the defendant's cab.

The defense's first witness was John Whittington, who was a passenger in the defendant's cab. He testified that the defendant's cab was proceeding north on State in the east lane and the light for State was green for the last half block of their approach to the intersection. It was still green when the cab entered the intersection to make a right turn. He estimated that the cab had been proceeding at about 15 to 20 miles per hour before it began to brake in anticipation of making a right turn. At the time of impact the cab was not moving very fast because it had just turned the corner. When the impact occurred the cab was in the right (south) curb lane of Jackson facing east after having completed its turn. Whittington testified that he first saw the plaintiff's automobile two seconds before the collision and it was moving faster than the defendant's cab. He did not recall hearing any screeching of brakes or the sounding of a horn by either vehicle prior to the accident. The left front fender of the cab came into contact with the other vehicle somewhere between its front and midsection.

James Davis, who testified for the defense, said he was a cab driver for Simmon's Cab Company at the time of the accident and had observed the collision. He was eastbound on Jackson in the south curb lane. As he approached the intersection at State and Jackson going about 15 to 20 miles per hour the plaintiff's vehicle passed him on his left. Mr. Davis was coming to a stop at State because the traffic signal had turned yellow. The plaintiff's car entered the intersection when the light was yellow and collided with the defendant's cab. At the time of the collision the traffic signal on Jackson was red. Davis testified that prior to working for Simmon's he had been employed several times with the defendant Yellow Cab Company.

Defendant Elza Watson, who was driving the cab for defendant Yellow Cab Company the night of the incident, was the final witness for the defense. He testified that he was going north on State Street in the east curb lane. He was reducing his speed from approximately 15 to 7 miles per hour in order to make a right turn onto Jackson. For the last half block of his approach to the intersection the traffic signal was green. He was turning into the right (south) curb lane of Jackson and heading in a northeasterly direction when the plaintiff's automobile collided with his cab. At the time of the collision the light for State Street which he had just turned off of was green. The left front of his cab collided with the right front of the plaintiff's automobile. The first time he saw the plaintiff's automobile was just before his cab crossed over the crosswalk just south

of Jackson. At that time the plaintiff's automobile was on Jackson about 75 feet west of State. When his cab came to a halt after the collision, it was in the right (south) curb lane of Jackson.

In summing up the evidence the court, sitting as the finder of fact, noted that both the plaintiff and defendant had testified that they had a green light, while the independent cab driver stated that the light was yellow for the plaintiff when he proceeded into the intersection. Noting the testimony of the city employee that the traffic signals both on Jackson and State are yellow simultaneously for three seconds while changing from red to green, the court concluded that both the plaintiff and defendant had entered the intersection on a yellow light and were both guilty of negligence. The court stated that, "As a question of fact and not as a question of law, I cannot find that the driver of the Yellow Cab Company was guilty of wilful and wanton misconduct." Because the plaintiff was contributorily negligent, the court found in favor of the defendants.

■■ Plaintiff contends there was insufficient evidence to support the finding that he was contributorily negligent. Defendant argues that while the court found that he had entered the intersection on a yellow light, present law does not prohibit entry into an intersection on a yellow light under all circumstances. While the present statute regarding traffic signals states that a yellow light signifies that the green is being terminated or that a red light will be exhibited momentarily requiring traffic facing it to stop (Ill. Rev. Stat. 1973, ch. 95½, par. 11—306(b)), plaintiff contends that the law allows traffic to proceed into an intersection on a yellow light if they cannot safely stop. (*Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 69 N.E.2d 293.) We note that the applicable Chicago City ordinance allows an entry into an intersection under such conditions stating that "if such a stop cannot be made in safety, a vehicle may be driven cautiously through the intersection." (Municipal Code of Chicago, ch. 27, sec. 202.) However, we do not see how this contention helps the plaintiff's cause. There was no evidence to show that the plaintiff could not have stopped safely before entering the intersection. In fact the Simmon's Cab driver had done just that while the plaintiff was in the process of passing him as he approached the intersection. It is also doubtful that the evidence shows that the plaintiff drove "cautiously" through the intersection. Despite the fact that the plaintiff before entering the intersection observed the defendant's taxicab approaching the intersection, and despite the fact that Jackson is four lanes wide, the plaintiff's testimony was that he remained in the far south lane of Jackson and collided with the defendant making a right turn into that south lane. In *Landess v. Mahler*, 295 Ill. App. 498, 15 N.E.2d 13, this court decided there was negligence under facts quite similar to those involving the plaintiff's conduct. In *Landess* the individual

found negligent had tried to beat the yellow light rather than stopping as he could have. The Uniform Act Regulating Traffic on Highways at that time contained the provision the plaintiff now refers to allowing a motorist to drive cautiously through an intersection on a yellow light if he cannot safely stop. (Ill. Rev. Stat. 1937, ch. 95½, par. 129.) The court found that this provision was not meant to encourage motorists to increase speed when approaching an intersection, but to proceed cautiously and to stop on a yellow light where this could be done safely.

■■ Plaintiff contends, however, that even if he violated the statute, the violation must be the proximate cause of the accident before such a violation would constitute contributory negligence. We agree with this contention. While a violation of a statute, the purpose of which is to promote safety, is prima facie evidence of negligence, there is no liability unless the evidence establishes that this violation was the proximate cause of the injury. (*Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74; *Watson v. Chicago Transit Authority*, 12 Ill. App. 3d 684, 299 N.E.2d 58.) Again, however, we do not find that this contention helps the plaintiff's cause. If the plaintiff had obeyed the statute and stopped when the yellow light appeared, there would have been no accident. His conduct in entering the intersection on the yellow light and not proceeding cautiously clearly precipitated the accident. While the trial court's finding that the defendant also entered the intersection on the yellow distributes part of the blame for the accident to the defendant, this does not relieve the plaintiff of blame. The negligence of the defendant and the plaintiff both contributed to the accident and under these circumstances neither can hold the other liable.

■■ Even if the plaintiff had not violated the law by entering the intersection on a yellow light, there is evidence to support a finding that the plaintiff was contributorily negligent. A motorist has a duty to maintain a proper lookout, and the failure to do so may constitute negligence even where he has the right-of-way over another motorist with whom he collides. (*Smith v. Bliss*, 12 Ill. App. 3d 514, 299 N.E.2d 576; *Homka v. Chicago Transit Authority*, 2 Ill. App. 3d 334, 276 N.E.2d 351; *Conner v. McGrew*, 32 Ill. App. 2d 214, 177 N.E.2d 417.) By the plaintiff's own testimony he observed the defendant's cab only 30 or 40 feet from the intersection approaching at 20 to 25 miles per hour and despite this the plaintiff proceeded into the intersection and did not look at the defendant again until the collision occurred. He did not, by his own testimony, apply his brakes, sound his horn or change lanes. The night was clear, the streets were dry and Jackson was four lanes wide with no apparent traffic to prevent the plaintiff from maneuvering to avoid the accident. If the plaintiff had been alert and maintained a proper lookout the accident could have been avoided. We are of the opinion that there was sufficient

evidence to support the court's finding that plaintiff's contributory negligence was the proximate cause of the occurrence.

The plaintiff's second major contention is that the court erred in not finding the defendant guilty of wilful and wanton misconduct. Plaintiff contends that the evidence established that the defendant approached the intersection at excess speed, lacked control of his vehicle and failed to properly execute a right-hand turn as close to the curb as possible and did these acts in disregard for the safety of the plaintiff whom the defendant had observed approaching the intersection. The plaintiff places strong emphasis on the fact that there were skid marks found at the scene which he contends demonstrate the defendant's excessive speed and lack of control. These facts, plaintiff contends, establish a prima facie case of negligence. We do not agree with the plaintiff that the evidence establishes these facts. The driver of the cab testified that he had reduced his speed from 15 to 7 miles per hour before making the turn and that he remained in the curb lane throughout the turn. His passenger also testified that the cab was moving slowly as it turned the corner, remaining in the curb lane and he did not remember hearing any screeching of brakes. The court could have properly believed this testimony. The driver of the cab testified that he observed the plaintiff's car approaching the intersection. However, he believed he had the light and the defendant's testimony placed himself closer to the intersection than the plaintiff. This may have led the driver of the cab to conclude that either the plaintiff would stop before entering the intersection or that he (the driver) could safely negotiate the intersection before the plaintiff entered it. Such a misjudgment may have constituted negligence, but whether it constituted wilful and wanton misconduct was a question of fact for the court to decide, in absence of a jury.

■■■ In defining wilful and wanton misconduct, the Illinois Supreme Court stated in *Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 583, 69 N.E.2d 293, 300:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

(See also *Ritter v. Ferenczi*, 16 Ill. App. 3d 218, 305 N.E.2d 426; *Lewandowski v. Bakey*, 32 Ill. App. 3d 26, 335 N.E.2d 572.) In a case with facts similar to our own, *Todd v. Borowski*, 25 Ill. App. 2d 367, 166 N.E.2d 296, a driver had observed a truck approaching on a highway he desired to cross. The driver misjudged the speed of the approaching truck

and pulled across the highway precipitating an accident. The jury did not find this to be wilful and wanton misconduct and on appeal the reviewing court held that the jury's finding was not against the manifest weight of the evidence. The plaintiff has cited several cases which hold that there was sufficient evidence of wilful and wanton misconduct to create a question of fact for a jury or court in a bench trial to decide. This is precisely what was done in the instant case. The court, sitting as the finder of fact, heard all the evidence and thereafter found in its own words that, "As a question of fact and not as a question of law, I cannot find that the driver of the Yellow Cab Company was guilty of wilful and wanton misconduct." Whether the conduct causing an injury is wilful and wanton misconduct is usually a question of fact for the finder of fact to determine and not a question of law for a reviewing court to determine. (*Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 69 N.E.2d 293; *Lewandowski v. Bakey*, 32 Ill. App. 3d 26, 335 N.E.2d 572.) Whether the defendant's conduct was a misjudgment constituting negligence or act made with knowledge of a known danger or made with reckless disregard for the safety of others was a question of fact for the trial court to decide and we are of the opinion that the court's finding that the defendant's conduct did not constitute wilful and wanton misconduct is not againt the manifest weight of the evidence.

■■ The plaintiff's final contention is that the court conducted the trial unfairly toward the plaintiff by "taking over the trial" and making erroneous rulings on the materiality of evidence the plaintiff wished to introduce. We have examined the record carefully and do not find this contention to be valid. The majority of the court's rulings and statements the plaintiff objects to reflect the court's efforts to keep the trial focused on material matters and to keep irrelevant issues and evidence out of the proceedings. The determination of whether evidence is relevant is largely within the discretion of the trial court and a reviewing court will not disturb the ruling unless there has been an abuse of discretion. (*People v. Jenko*, 410 Ill. 478, 102 N.E.2d 783; *Kallas v. Lee*, 22 Ill. App. 3d 496, 317 N.E.2d 704; *Young v. Gateway Transportation Co.*, 26 Ill. App. 3d 864, 326 N.E.2d 222.) We are of the opinion that there was no abuse of discretion and that the court conducted the trial in a fair manner.

Accordingly, the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and SIMON, J., concur.