RICHARD THOMAS, Indiv. and as Father and Next Friend of Charles Thomas, a Minor, Plaintiff-Appellant, *v.* JOHN C. PRICE, Defendant-Appellee.

Third District   No. 79-383

Opinion filed March 7, 1980.

Robert L. Ellison and Raymond Conklin, both of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellant.

John W. Robertson, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On July 16, 1977, Charles Thomas, a nine-year-old boy, was injured when he was struck by a motorcycle driven by John Price. The Thomas

boy's next friend filed a complaint against Price in the circuit court of Whiteside County. The complaint alleged that Price was guilty of negligence as well as willful and wanton misconduct. The trial judge directed a verdict in favor of the defendant on the willful and wanton issue, while a jury found the nine-year-old guilty of contributory negligence, thus absolving the defendant of liability on the negligence issue. This appeal is taken as to both decisions.

July 16 was a clear, dry day in the Erie, Illinois, area. Charles and his friend, Kyle Redell, had left their homes after lunch and ridden their bicycles in the ditches adjacent to the Erie-Cordova blacktop. After a few hours of play, the two boys saw a dog which they believed to belong to a neighbor family. The dog was across the road, on the south side of the blacktop. Leaving their bikes on the north side, the boys crossed the road to get the dog.

At approximately the same time, Harold Grunwald was driving his auto eastbound on the blacktop traveling in the southernmost lane, the defendant Price was riding his motorcycle westbound in the northern-most lane, and Steve Snowden was mowing grass on a riding lawn mower approximately 200 feet west of what was to be the place of injury. Then unfolded a sequence of events which undoubtedly occurred with more rapidity than can be recounted here. The boys reached the south side of the blacktop and realized that the dog they suspected of being a neighbor's pet was a different and considerably less affable animal. The look-alike canine began to bark at and chase the pair, who responded by fleeing in fright toward the road, the bicycles, and the hoped-for safety of the blacktop's north shoulder.

Meanwhile, Grunwald was passing Snowden as he noticed the boys running toward the road ahead of him and to his right. He slowed his vehicle so that he could either drive by or stop suddenly, as the exigencies of the developing crisis demanded. When Grunwald cleared the point where the boys were running toward the road, he increased his speed and then noticed the defendant on his motorcycle headed west.

Snowden watched these events from the seat of his lawnmower. He saw the Grunwald car and thought that Charles and Kyle nearly ran into it. The motorcycle came into his view for the first time from behind the Grunwald car. Unfortunately, neither Charles nor the defendant saw one another any sooner, as their paths met north of the center line in the westbound lane of the Erie-Cordova road.

On appeal to this court, the plaintiff urges that these facts, and other aggravating circumstances, precluded the trial court's directing a verdict for the defendant on the issue of willful and wanton misconduct. We are asked to consider the following:

(1) Although the general speed limit at the accident scene was 55 miles per hour, a "*Slow Children*" sign was posted just east of the accident scene.

(2) The defendant was acquainted with the blacktop and was aware that young children lived in homes adjacent to it.

(3) The defendant admitted that he noticed the Grunwald auto reduce speed but nevertheless continued traveling at approximately 50 miles per hour.

(4) The defendant did not swerve or sound his horn prior to the collision.

We are asked to hold that a jury could have found willful and wanton misconduct in either the defendant's excessive speed, in his failure to prevent impending danger after discovery, or in his failure through carelessness to discover impending danger.

This court recently dealt with the issue of excessive speed as evidence of willful and wanton misconduct in the case of *Porro v. P. T. Ferro Construction Co.* (1979), 72 Ill. App. 3d 377, 390 N.E.2d 958, 960. There, we held that "when speed is at issue, that which distinguishes wilful and wanton conduct from negligent conduct is the degree of speed. Where the speed is grossly fast for conditions, the conduct is wilful and wanton. Short of that, excessive speed constitutes negligent conduct." We there acknowledged, as had been previously stated (*Tjaden v. Moses* (1968), 94 Ill. App. 2d 361, 364-65, 237 N.E.2d 562, 564), that "[w]hile wilful and wanton misconduct as distinguished from negligence may be a matter of degree there is, nevertheless, no doubt that a distinction exists and that courts are frequently called upon to delineate the boundaries thereof." And so in this case we are asked to determine whether the degree of speed has advanced defendant's conduct beyond the boundaries of mere negligence.

We note initially that in determining the degree of offensiveness exhibited by excessive speed, the surrounding circumstances can be as telling as the actual speedometer reading. (*Smith v. Polukey* (1959), 22 Ill. App. 2d 238, 160 N.E.2d 508.) As an example, driving 55 miles per hour on a given mile of highway may constitute reckless, reprehensible conduct on a damp and foggy night, yet not so on a clear, dry day. Similarly, the posted speed is one of those circumstances which can be considered in evaluating the degree of flagrancy of offending conduct.

■■ In the case at bar, the evidence reveals that the defendant was traveling at less than the posted limit of 55 miles per hour. There is no evidence that his vehicle was not operating properly. The record indicates that the Erie-Cordova road is straight and level at the accident scene. Finally, July 16 was a beautiful day—road and visibility conditions

were unobjectionable. In short, if there were ever a day when all the conditions permitted travel at speeds approximating the legal limit, that day was July 16, on the blacktop in question. The plaintiff urges us that in light of the "Slow Children" sign and defendant's knowledge of children in the neighborhood, even with all other conditions at optimum, 50 miles per hour was too fast. We simply can't agree. The State trooper who investigated the accident scene testified that the sign in question was not a control sign which required a speed reduction. Although certain signs require a reduction in speed because of the presence of children, the sign described here merely alerted passing motorists. In combination with other adverse conditions, the failure to reduce speed in response to such a sign could have constituted grossly offensive conduct. Indeed, even with ideal conditions, the failure to reduce speed in response to such a sign might be said to constitute negligent conduct. However, under the driving conditions which prevailed on July 16, we fail to find in defendant's conduct the unbridled disregard for the safety of others necessary to show willful and wanton misconduct. *Lewandowski v. Bakey* (1975), 32 Ill. App. 3d 26, 335 N.E.2d 572.

■■ ■ Upon reviewing the record, we also find unconvincing plaintiff's allegation that the defendant failed to prevent impending danger after discovery. Charles and Kyle ran behind Grunwald's auto into the path of the defendant. Defendant's vision was obstructed by Grunwald's auto until he was approximately 60 feet from the point of impact. This court may properly take judicial notice of the time required to travel 60 feet at 50 miles per hour. (*Nicketta v. National Tea Co.* (1949), 338 Ill. App. 159, 87 N.E.2d 30; *Mueth v. Jaska* (1939), 302 Ill. App. 289, 23 N.E.2d 805.) To the extent that the approximations as to speed and distance are correct, the defendant had 8/10ths of a second to slow his vehicle, sound his horn, or otherwise react. That he was able to react at all represents extraordinary alertness, a response which contradicts the conclusion urged upon us by the plaintiff. It clearly does not support a count of willful and wanton misconduct. We likewise hold that defendant's failure to discover Charles and Kyle until seconds before impact when they appeared from behind Grunwald's auto does not constitute the callous and reckless inattention which would permit a jury to find willful and wanton misconduct.

We believe the facts of the case *sub judice* are governed by the decision in *Allen v. Colaw* (1960), 27 Ill. App. 2d 304, 169 N.E.2d 670. There, the minor plaintiff rode his bicycle into the path of the defendant motorist. The collision occurred in front of a grade school during the noon hour. There, as in the instant case, the defendant motorist was alerted to the possible presence of children. There, as in the instant case, the

defendant motorist was driving at a reasonable rate of speed. And there, as we hold here, the trial court correctly withdrew the willful and wanton misconduct charge from the jury.

■■■ The plaintiff contends that the special verdict of the jury finding the minor plaintiff to be guilty of contributory negligence was against the manifest weight of the evidence. This court's attention is directed to the rule with regard to minors between the ages of 7 and 14. It is said that a presumption exists that such a child is incapable of negligence, but that this presumption can be rebutted by a showing that the child has the mental capacity to act negligently. (*Piechalak v. Liberty Trucking Co.* (1965), 58 Ill. App. 2d 289, 208 N.E.2d 379.) Such a presumption can be rebutted, and whether the presumption has been rebutted is a question for the trier of fact. (*American National Bank & Trust Co. v. Pennsylvania R.R. Co.* (1964), 52 Ill. App. 2d 406, 202 N.E.2d 79, *aff'd* (1966), 35 Ill. 2d 145, 219 N.E.2d 529, *cert. denied* (1967), 385 U.S. 1035, 7 L. Ed. 2d 683, 87 S. Ct. 777.) We believe there is sufficient evidence in the record to support the decision reached by the trier of fact in the case at bar. Charles had been cautioned as to the dangers of the Erie-Cordova road by his parents. In fact, he was not allowed to ride his bicycle on the blacktop, although on the day of the accident he disregarded this family rule. Both Charles and Kyle testified that they were fully aware of the dangers presented by the traffic on the blacktop near their homes. The jury heard evidence that the plaintiff knew of the danger, appreciated the danger, and negligently disregarded that danger. The record thus supports their decision on the special verdict.

After a careful review of the briefs of counsel and the authorities cited therein, and for the reasons above stated, we conclude that the result reached by the Whiteside County circuit court should be affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.