PAMELA McWETHY, *et al.*, Plaintiffs-Appellants, *v.* DONALD LEE, Adm., Defendant-Appellee.

(No. 11365; )

Fourth District—August 27, 1971.

Summers, Watson & Kimpel, of Champaign, for appellants.

Phillips, Phebus & Tummelson, of Urbana, (Hurshal C. Tummelson, of counsel,) for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

This is that rare case. It is that extremely unusual situation involving willful and wanton misconduct that no longer remains a question of fact for the jury, but one that is established as a matter of law. In this appeal we must consequently reverse the jury verdict for defendant, grant the plaintiff a judgment *n.o.v.*, and remand the cause for a new trial as to damages only.

The rather detailed factual background unfolds thusly:

We begin with six teenagers in a car—three boys, three girls. One boy 18, two boys 17, two girls 15 and the other girl 13. It was on a Friday evening in November that tragedy struck these young people at the edge of the City of Champaign. Shortly after the dinner hour the three boys came by in Tom Stigall's car and invited the three girls to go for a ride. During the course of the evening they rode around, cracking jokes and "goofing off", with the boys taking turns driving. At somewhere around 9:30 that evening they pulled into a drive-in restaurant, with defendant's decedent, Rick Lee, age 17, at the wheel. The plaintiff, Pamela McWethy, age 13, was riding in the right rear seat. The car left the drive-in and headed west on Bradley Avenue, going about 35 miles per hour, when an unidentified "Mustang" pulled alongside. Apparently both cars engaged in "a slight drag race" that lasted for about one and a half blocks to a stop sign at the intersection of Bradley and McKinley, where Rick Lee properly stopped the Stigall car. The "Mustang" turned right onto McKinley, when a police car came around the Stigall car and also turned right behind the "Mustang". As the police officer was getting out of the squad car, Lee started up from the stop sign at a normal rate of speed; but immediately thereafter he accelerated to a high rate of speed, went right past plaintiff's house on Bradley, was being pursued by a police car driving 85 to 90 miles per hour, culminating in a collision about a mile down the road at the intersection of Bradley and Mattis.

During this high-speed, mile-long chase, all of the other teenagers were yelling to Rick to slow down or stop, and Tom Stigall, the car's owner, sitting in the left rear seat, leaned over and unsuccessfully tried to reach the ignition switch. The car ran the stop sign at Mattis, struck a southbound car broadside with enough violence that both vehicles became airborne. The tragedy: Rick Lee died as a result, and the other five teenagers were severely injured.

Pertinent only to this case, the undisputed evidence was that plaintiff, Pamela McWethy, suffered multiple lacerations to the head and face, a fractured nose, fractured jaws, a cut tongue, back and leg injuries; operations on her jaw and nose, and plastic surgery, would be required; she was left with permanent facial scars and a numb left foot.

In his opening statement, defendant's counsel stated as follows:

Mr. TUMMELSON: "* * * Now, they had beer in the car. Pam McWethy drank the beer. She was fourteen. I believe her testimony will be that she drank the beer. These young people were out riding around. I think the evidence will be in the country north of Champaign. They had done this on other occasions. This was not their first experience in doing this. Tom Stigall was driving the car, it may be Stigall, you will hear it from the evidence. He was driving the car in the beginning. I forgot which girl was his date. He became so intoxicated that he could no longer drive according to what I believe will be the testimony of Debra, I mean, of Pamela McWethy. He was so intoxicated he could not drive. One of the other boys then, as Mr. Summers has suggested, it was Tom Holden drove for a short while, later Ricky Lee was driving. I believe the testimony of this plaintiff will be that Ricky Lee was not intoxicated, that he had not had that much beer * * *."

Defendant offered no evidence whatever regarding the occurrence and relied solely upon cross-examination of plaintiff's witnesses to make his case. He was able, by favorable ruling of the trial court, to inject into the record and the evidence before the jury the "presence of beer"— the record reflects that upon over 50 occasions defendant's counsel referred to the "presence of beer" in front of the jury. But at no time throughout the course of this trial was he able, by either direct evidence or cross-examination, to show that intoxication was present or resulted from the presence of such beer. Indeed, as he informed the presiding judge, this was not his intention. His theory was that all of these young people were throwing beer out of the car after observing the police car, and that this was a surrounding circumstance and fact that the jury can consider on the question of whether or not the plaintiff was free from

willful and wanton misconduct. Plaintiff's counsel objected strenuously and argued that the presence of beer could only be admitted if it demonstrated, or resulted in, intoxication of either plaintiff or defendant, and in the absence of such showing its admission was highly prejudicial. The trial court, however, agreed with defendant's counsel, stating "I think it is a circumstance that can be considered." Plaintiff's counsel persistently and consistently objected to all cross-examination of each witness as to the presence of beer, and adequately preserved the question for this court.

The jury returned a verdict in favor of defendant, and plaintiff subsequently presented a lengthy, 21-page, post-trial motion, including therein a memorandum of authorities. After hearing the motion, the court merely entered an order denying same, without enumerating his reasons. We note, parenthetically, that reviewing courts of this state have regularly indicated that some record of a trial court's reasons for its dispositive action is of vast assistance to an appellant tribunal. We are sorry that no such record was made on the post-trial motion here, since the trial judge was confronted with the very hub questions around which this appeal turns. His reasons would have been most helpful to us, and because of the importance that we place upon a trial court's reasoning, we again flag this appellate observation. *McElroy v. Patton*, —— Ill.App.2d ——, 265 N.E.2d 397, 398.

■ Thus, defense counsel was permitted upon cross-examination to inquire of each one of the surviving five teenagers as to the "presence of beer." We would point out here that at no time on direct examination had any of these witnesses been questioned as to beer, either the presence or consumption of it, and at no time did any of the five witnesses *deny* the presence of beer in the automobile. Consequently, under the guise of, and for the ostensible purpose of, impeachment, defense counsel was permitted to continue his excursion into this quite irrelevant and immaterial, yet highly prejudicial, area. As to the first point, we consider it unnecessary to cite authority for the catholic rule that questions on cross-examination are to be limited to those matters which arose upon direct examination. And as to the second point, in the law of evidence "impeachment" is "To call in question the veracity of a witness, by means of evidence adduced for that purpose, or the adducing of proof that a witness is unworthy of belief." (*Black's Law Dictionary*, 1968, Revised 4th Edition.) Patently, in this instance any or all of these witnesses would have been required to deny the "presence of beer" in order for defendant's counsel to have been properly permitted to attempt impeachment. On both scores the cross-examination was inappropriate: no

direct, no denial. Consequently, the occasion for attempted impeachment was non-existent and the cross-examination in this area was highly improper.

 Now, from defense counsel's opening statement here quoted, it is readily apparent that he interjected at the very nativity of the trial references to "intoxication". We rather suspect that he was fully aware he would be unable to produce sufficient evidence of intoxication to justify evidence of the "presence of beer". It requires more, much more, than either the mere presence of, or the drinking of, alcoholic beverages to interject the issue of intoxication. As this court said in *Shore v. Turman*, 63 Ill.App.2d 315, 210 N.E.2d 232, 235-236: "Drinking, standing alone, cannot be equated with intoxication nor can the use of alcoholic liquor, standing alone, characterize a person as intoxicated." The mere presence or consumption of alcohol is insufficient; there must be proof of facts which afford indicia of intoxication, as our courts have consistently held. *Kitten v. Stodden*, 76 Ill.App.2d 177, 221 N.E.2d 511, 514.

█ Having thus planted the poisoned seed of "intoxication" in the minds of the jurors in opening statement, defendant's counsel then proceeded with his 50-plus questions involving the "presence of beer". After his repetitive cross-examination on a subject that should have been forbidden, he relied completely upon his tainted cross-examination and offered no evidence whatsoever in his case in chief regarding either intoxication or beer. And in his closing arguments, he nailed his point home by referring to "beer" exactly twenty-two times! (We counted them.)

In short: defense counsel's opening statement injected the highly prejudicial issue of intoxication that was not in the case at all; his continuing cross-examination of witnesses as to the "presence of beer" was both improper cross and improper impeachment; his closing argument aggravated the error. His trial strategy worked, for he was able to sow, cultivate, reap and harvest an undeserved verdict by improper procedure and inadmissible substance. His *modus operandi* was one of innuendo, based solely on irrelevant and inadmissible statements. The inadmissible substantive matters and the totally improper procedure were so highly prejudicial as to call for reversal.

 The other hub on the axle of this case revolves around the standard of care required of Ricky Lee (defendant) and Pam McWethy (plaintiff). Rich was a 17-year-old licensed driver of the automobile—a minor. But our law is clear that when it comes to the operation of a motor vehicle, a minor is required to exercise the same standard of care as an adult. (*Betzold v. Erickson*, 35 Ill.App.2d 203, 182 N.E.2d 342.) But as to Pam McWethy, the 13-year-old, 8th grade plaintiff in this cause, the

standard is different: "* * * a child under the age of 14 years is presumed free of contributory negligence * * *" (*Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.*, 73 Ill.App.2d 5, 220 N.E.2d 43, 49.) And we can conceive of no valid argument which would deny to a child under 14-years-of-age a presumption of freedom from willful and wanton misconduct, if our law presumes her free from the lesser requirements of contributory negligence. To hold otherwise would be to do violence to logic and common sense. Yet that is exactly what defense counsel maintained in his closing argument to the jury, where he said: "* * * Pamela McWethy, even though she was only 12 or 13 has a like duty to protect herself, she has the same duty to be free from willful and wanton misconduct * * * Pam McWethy was just as wrong. Ladies and gentlemen, don't be fooled by her age. You saw these girls testify, you heard what they're capable of doing when they testify on cross examination. Don't be fooled because they were 12 or 13, they were just as mature as the others and they're chargeable with just the same obligation that they want to put on Richard Lee * * *."

Such argument was contrary to the law of this jurisdiction.

■■■ The jury was properly instructed as to the burdens of proof imposed upon plaintiff: that she be free from contributory willful and wanton misconduct; that Rich Lee improperly acted or failed to act in a willful and wanton manner; that Pam McWethy was injured; and that her injuries were proximately caused by Rick's willful and wanton misconduct. The pleadings alleged that Rick's acts were driving at a high and dangerous speed, disregarding stop signs, failure to yield right-of-way and operation of the car with reckless disregard for the safety of the plaintiff. We have carefully examined the entire record before us, and after casting aside certain satellite issues that fall in the category of minutia, we can come to but one conclusion: the proper and admissible evidence in this case clearly dictates that plaintiff was entitled to a verdict. The undisputed evidence reflects that Rick Lee was driving in excess of 85-90 miles per hour, ran the stop sign at the intersection of Bradley and Mattis, failed to yield the right of way and operated the vehicle with a "reckless disregard" for safety. The 13-year-old plaintiff, along with the others, was yelling at Rick to slow down or stop, while Tom Stigall was trying to reach over and turn off the ignition. What more could a 13-year-old, non-licensed, rear-seat passenger do under these circumstances? Anything more? We know not what it could be. Not only was she *presumed* to be free from contributory willful and wanton misconduct, but the evidence *affirmatively* demonstrated that she was free from such action.

Upon the record before us, we hold that plaintiff alleged and proved all of the necessary components of a lawsuit based upon willful and wanton misconduct. And in our opinion, "* * * no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern RR. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 513-514.

Ergo, judgment for defendant is hereby reversed, judgment notwithstanding the verdict is hereby entered in favor of plaintiff, and this cause is remanded to the circuit court of Champaign County for a new trial as to damages only.

Reversed and remanded.

TRAPP, P. J., and CRAVEN, J., concur.