DAVID B. COLEMAN *et al.*, Plaintiffs-Appellants, *v.* HAROLD A. WILLIAMS, Defendant-Appellee.

Second District (1st Division)   No. 75-72

Opinion filed October 15, 1976.

Pedderson, Menzimer, Conde, Stoner, Ferolie & Spelman, of Rockford, and William J. Harte, of Chicago, for appellants.

Pfeil & Graves, of Rockford, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The plaintiffs herein filed a four-count complaint for personal injuries and loss of consortium. The trial court directed a verdict in favor of the defendant on the two wilful and wanton counts and the jury returned a verdict of not guilty on the two negligence counts. The plaintiffs filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied. They appeal.

On the night of January 22, 1972, plaintiff David Coleman was driving easterly on Harrison Avenue in the City of Rockford. His car ran out of gas approximately two blocks east of the intersection. He parked the car off the road and started walking in a westerly direction on the south shoulder of Harrison Avenue toward a gas station. The defendant, driving his vehicle in a easterly direction on Harrison Avenue, came to the intersection of 20th Street where he stopped for a red light. Harrison Avenue is four lanes wide west of the intersection of 20th Street but it

narrows to two lanes east of the intersection. From the record it appears that the defendant struck the plaintiff at a point 50 feet east of the intersection as the glasses of the plaintiff were found at that point. Plaintiff was carried on the hood and the windshield of defendant's car until the car came to a stop, and he was found 26 feet in front of the defendant's vehicle, lying on the highway.

There were conflicting accounts of how the accident occurred. Plaintiff testified that he was walking 6 feet off the edge of the road immediately before he was struck. The next thing he remembered was waking up in the hospital. Defendant testified that he was in the center lane of Harrison behind four cars when they stopped for the red light. When the light changed, the first car turned left and the defendant went straight through the intersection behind the other cars in the lane which would become the eastbound lane where the road narrows after the intersection. Defendant testified that he was going 20-25 m.p.h. He further testified that he did not see plaintiff until plaintiff "slipped or stumbled" onto the road approximately three feet in front of the defendant's vehicle. Defendant further testified that after he had hit the plaintiff, he hit the brakes very slowly and came to a gradual stop, without skidding.

However, the record reveals that defendant had made several prior inconsistent statements with regard to how the accident occurred. Police officer Morris testified that the defendant told him at the time of the occurrence that he was eastbound on Harrison and he came up behind a line of cars, one of which was making a left hand turn onto 20th Street. Defendant said he went around the line of four or five other cars in the curb lane and continued on Harrison, where it had become two lanes. Additionally, Officer Miller testified that defendant told him that he was eastbound in the curb lane of Harrison. This would have placed the defendant in the curb lane which ends at the intersection, causing a driver to bear left in order to reach the paved portion of the road instead of the shoulder. Further, at his deposition, contrary to his testimony, defendant stated:

> "My car skid along for a while until I came to a complete stop—about 40—somewhere around there—40 feet—somewhere around there 35, 40. Somewhere around there."

In support of plaintiff's theory of how the accident occurred, Officer Morris. testified that he investigated the scene of the accident after the plaintiff had been placed in the ambulance. He testified that he found skid marks which commenced 50 feet from the intersection. There were two skid marks to approximately where the defendant's car came to a stop. The right skid mark started at a point 4½ feet off the highway on the shoulder and extended for 20 feet parallel to the lefthand skid mark. The left skid mark began 20 inches from the south edge of the pavement and

continued for 56 feet. Officer Morris expressed the opinion that these skid marks were left by defendant's automobile.

There was also testimony at trial concerning the alleged intoxication of the defendant at the time of the occurrence. Defendant testified that he had "about four beers" before the accident and that he was not intoxicated. Officer Morris in his testimony stated that in his opinion the defendant was, in fact, intoxicated. Defendant called Officer Miller who stated that he interviewed the defendant at the scene and that he also interviewed the defendant at the police station. Officer Miller testified that he noticed nothing about the odor of alcohol on the defendant. However, on cross-examination, Officer Miller admitted that he signed a "Motor Vehicle Intoxication Report" as to the defendant and upon re-direct examination stated that the words "driving under the influence" were in his handwriting. Additionally, Officer Rote, one of the investigating officers at the scene, testified that he was within three to four feet of the defendant, he noticed the odor of alcohol on the defendant and that in his opinion the defendant, Harold Williams, was intoxicated.

The plaintiffs really have raised three issues herein, the first being that the trial court abused its discretion in denying plaintiffs' motion for a judgment *n.o.v.* on defendant's liability and new trial on damages or, in the alternative, a new trial on all issues because the verdict was contrary to the manifest weight of the evidence. The second contention presented is that the court erred in dismissing the wilful and wanton counts of the complaint after the close of the plaintiffs' case. Lastly, plaintiffs contend that the court committed reversible error by permitting defendant to show that the plaintiff had been in taverns on the afternoon and evening in question where there was no evidence of intoxication.

We shall first consider the last contention of the plaintiffs. Prior to trial plaintiffs' counsel made a motion in limine to preclude the defendant from using "any testimony, remarks, questions, items of evidence or argument" which might inform the jury that the plaintiff had been drinking beer in the Victory Tap and the V & J Tap on the afternoon and evening in question. The basis of this motion was that there was no evidence whatsoever of the intoxication of the plaintiff. In support of this motion it was stated that the depositions of the investigating officers disclosed that only one of the five officers could recall noticing an odor of alcohol on the plaintiff but it was not strong. It is to be noted that the officer who rode with the plaintiff in the ambulance to the hospital was one of the four who did not notice an odor of alcohol on the plaintiff. Also in support of this motion was the deposition of Neil Michael that he had been with the plaintiff at both the Victory Tap and the V & J Tap on the afternoon and evening in question and that when he left the plaintiff at 10 p.m. plaintiff was not under the influence of liquor. Likewise, in his deposition Thomas Davig stated that he was with the plaintiff

at the Victory Tap between 6 and 8 p.m. and that when he left the plaintiff was sober. Further in support of this motion plaintiff stated in his deposition that he and Neil Michael went to the Lunde Truck Sales and about 3 that afternoon went to the V & J Tap where he had two bottles of beer and two sandwiches. They left the V & J Tap at 4 and went back to Thompson's Landscaping to work on Neil Michael's truck. They had nothing to drink until about 6 when they went to the Victory Tap. At the Victory Tap plaintiff had a beer and a second beer with a poorboy sandwich and a third beer after finishing the sandwich. The trial court entered an order which provided:

> "IT IS HEREBY ORDERED that the Defendant, HAROLD A. WILLIAMS, and Korf, Pfeil and Graves, his attorneys, refrain from using any testimony, remarks, questions, items of evidence, or arguments which might inform the Jury of any of the following facts or particulars:
>
> 1. That Plaintiff, David B. Coleman, had consumed three beers or any other quantities of beer on January 22, 1972 prior to the occurrence in question.
>
> 2. That a moderate odor of alcohol or an odor of alcohol not so strong was observed about the Plaintiff, David B. Coleman, at the scene immediately after the occurrence.
>
> 3. That Officer Marvin Morris, while investigating said occurrence 'considered the possibility of asking for a blood test' for alcohol as to the Plaintiff, David B. Coleman.
>
> * * *
>
> IT IS FURTHER ORDERED that Defendant may trace the activities of Plaintiff on the day of the occurrence."

While no evidence was introduced that the plaintiff was intoxicated defendant's counsel was allowed to introduce evidence that plaintiff had spent several hours in two taverns on the afternoon and evening of the occurrence. In addition, counsel for the defendant stated in closing arguments:

> "I think you are entitled to consider where Mr. Coleman spent five of the last six hours that day before the occurrence took place, in the V & J and Victory."

In substance, plaintiff contends that defendant's counsel did by indirection what he could not do directly.

In *Clarke v. Rochford* (1967), 79 Ill. App. 2d 336, 340, 224 N.E.2d 679, 682, the court stated:

> "However, questions cannot be asked which intimate to the jury that a party was intoxicated at the time of the accident unless there is supporting evidence."

In *Gilberto v. Nordtvedt* (1971), 1 Ill. App. 3d 677, 679, 274 N.E.2d 139,

140, this court recognized "the rule that evidence of drinking cannot be equated with intoxication." However, in *Gilberto* we held that the irrelevant evidence of drinking is ground for reversal only if it results in prejudicing the jury's verdict. We feel that in the case before us that the references by counsel as set forth above did in fact prejudice the jury's verdict by inferring indirectly that the plaintiff had been drinking and raised the possible conclusion that he was intoxicated. In *Miller v. Chicago Transit Authority* (1954), 3 Ill. App. 2d 223, 229, 121 N.E.2d 349, 351, the court stated:

> "No effort was made to prove that plaintiff had been under the influence of liquor, as the questions might suggest, either at the time in question or at any other time. The highly prejudicial effect of such questions is not readily removed by the court's ruling sustaining objections thereto."

(See also *Mizowek v. DeFranco* (1976), 64 Ill. 2d 303.) In *Kitten v. Stodden* (1966), 76 Ill. App. 2d 177, 180, 221 N.E.2d 511, 513, the trial court gave IPI—Civil No. 12.01 which allowed the jury to determine whether the plaintiff, the defendant, or both, were intoxicated. The appellate court held that giving this instruction, when there was no evidence of plaintiff's intoxication, was prejudicial and reversible error. The court stated:

> "The drinking of an alcoholic beverage does not of itself raise the question of intoxication." (76 Ill. App. 2d 177, 180, 221 N.E.2d 511, 513.)

In *McWethy v. Lee* (1971), 1 Ill. App. 3d 80, 85, 272 N.E.2d 663, 666, plaintiff's counsel objected strenuously that the presence of beer in the car involved in a personal injury action could only be admitted if it demonstrated or resulted in showing intoxication of either the plaintiff or the defendant and in the absence of such showing the admission of evidence concerning the presence of beer was highly prejudicial. The court in that case reversed a judgment in favor of the defendant where defendant's trial counsel's strategy was similar to that herein, and the court stated:

> "His trial strategy worked, for he was able to sow, cultivate, reap and harvest an undeserved verdict by improper procedure and inadmissible substance. His *modus operandi* was one of innuendo, based solely on irrelevant and inadmissible statements." 1 Ill. App. 3d 80, 85, 272 N.E.2d 663, 666.

■■■ In the case before us defense counsel, by innuendo, planted in the minds of the jury the possibility, if not the probability, that the plaintiff was intoxicated as he was walking on the shoulder of the road in question. We find this to be reversible error. We further find that the order of the trial court which prohibited defense counsel from "using any

testimony, remarks, questions, items of evidence or arguments pertaining to the consumption of beer or the odor of alcohol about the plaintiff" was negated by the further portion of that order which allowed defense counsel to "trace the activities of the plaintiff on the day of the occurrence." From the record it appears that the activities of the plaintiff have no probative value on any issue in this case. We therefore find that that portion of the order allowing defendant to show plaintiff had been in the taverns on the day in question was error.

We turn now to the contention of the plaintiff that the verdict of the jury was contrary to the overwhelming weight of the evidence or, in the alternative, that the trial court abused its discretion in denying plaintiffs' motion for a new trial on all issues as being contrary to the manifest weight of the evidence. Counsel for the defendant contends that the testimony of the defendant, standing alone, clearly supports the verdict and in support of this argument states that the appellate court does not determine the credibility of the witnesses. After careful review of all of the evidence in this case and, considering the same in the light most favorable to the defendant, we find that the verdict of the jury herein was against the manifest weight of the evidence. The record discloses that the defendant's testimony was thoroughly impeached by numerous previous inconsistent statements. Defendant's testimony that he was in the center lane was contradicted by his statement at the time of the accident that he was in the curb lane which ends at the intersection. The police officers who investigated the accident testified that defendant was intoxicated and that the skid marks were made by defendant's car. Likewise, there is no evidence except defendant's own self-serving statement which tends to support defendant's claim that plaintiff was contributorily negligent in being on the highway.

Finally, we consider the propriety of the trial court's dismissal of the wilful and wanton counts of the complaint. Both the plaintiffs and the defendant have cited *Schneiderman v. Interstate Transit Lines* (1946), 394 Ill. 569, 583, 69 N.E.2d 293, 300:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. [Citations.] The question whether a personal injury has been inflicted by wilful or wanton conduct is a question of fact to be determined by the jury. *Bernier v. Illinois Central Railroad Co.* 296 Ill. 464."

In *Bremer v. Lake Erie & Western R.R. Co.* (1925), 318 Ill. 11, 20-21, 148 N.E. 862, 866, the Supreme Court stated:

"If there is any evidence in the record fairly tending to show such a gross want of care as in the case of wilful disregard of consequences or a willingness to inflict injury, then it is a question to be determined by the jury whether the negligent conduct of the defendant amounted to wantonness or wilfulness. [Citation.] What degree of negligence the law considers equivalent to wilful or wanton act is as hard to define as negligence itself, and in the nature of things is so dependent upon the particular circumstances of each case as not to be susceptible of general statement."

■■■ In *Lewandowski v. Bakey* (1975), 32 Ill. App. 3d 26, 29, 335 N.E.2d 572, 574, both negligence and wilful and wanton misconduct were alleged in separate counts. The court there struck the wilful and wanton count and the jury found for the defendant on the negligence count. In affirming that case, we found that there was insufficient evidence from which the jury could find a conscious indifference to a known danger or a reckless disregard of the safety of others. We find the opposite to be true in the case now before us. In *Lewandowski* we stated:

"The question [of wilful and wanton conduct] is usually one of fact for the jury. A verdict may be directed on the issue, however, when the evidence viewed in its light most favorable to the plaintiff does not tend to show wilful and wanton conduct." (32 Ill. App. 3d 26, 29, 335 N.E.2d 572, 574.)

The particular circumstance of the case before us, as disclosed by the record, indicates that the defendant was intoxicated. While punitive damages are not an issue in the case before us, it is interesting to note that the annotation at 65 A.L.R.2d 656 (1975), in discussing punitive damages, observed that, in view of the tremendous amount of automobile accident litigation, it is somewhat surprising that but few cases have presented the question of whether a motor vehicle operator's intoxication will justify the recovery of punitive damages. Likewise, there is a dearth of cases involving the issue of whether intoxication of the driver of a motor vehicle constitutes wilful and wanton conduct when that party is involved in a motor vehicle accident. In *Madison v. Wigal* (1958), 18 Ill. App. 2d 564, 572-73, 153 N.E.2d 90, 95, the court observed:

"From the evidence in this case the jury could well have believed that the defendant, while under the influence of intoxicating liquor, drove his car into the wrong traffic lane of a straight, flat four lane highway and struck the car of the plaintiff causing the injuries and damages here complained of. Under such circumstances, the assessment of punitive damages is proper."

We believe the same principle is involved in determining whether or not such evidence is sufficient to submit the question of wilful and wanton conduct to the jury. We further believe that it was for the jury to say whether or not the defendant was guilty of wilful and wanton conduct considering the evidence of his intoxication and his subsequent acts resulting in the accident herein. As the court stated in *Mantonya v. Wilbur Lumber Co.* (1929), 251 Ill. App. 364, 370:

> "A trial court should never take a case from the jury or direct a verdict for the defendant where to do so is to determine the weight of the plaintiff's evidence. The court is limited strictly to determine whether or not there is any evidence fairly tending to prove the facts alleged."

In the case before us we believe there was evidence of defendant's intoxication and we specifically find that the question of intoxication of the defendant is a factor to be determined by the jury as to whether or not the conduct of the defendant constitutes wilful and wanton conduct on his part.

■■ We therefore find that the trial court erred in dismissing the wilful and wanton counts of the complaint.

For the foregoing reasons the judgment of the trial court is reversed and remanded with instructions to reinstate the wilful and wanton misconduct counts and to hold a new trial on all issues in conformity with the findings expressed herein.

Reversed and remanded with instructions.

SEIDENFELD and HALLETT, JJ., concur.