STEVEN BODKIN Plaintiff-Appellee, v. 5401 S.P., INC., d/b/a Lindy's Chili Parlor, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—01—0228

Opinion filed March 29, 2002.

John J. Piegore and John A. Husmann, both of Kiesler & Berman, of Chicago, for appellants.

Kenneth J. Sophie, Jr., and Vincent B. Browne, both of Harrington, Thompson, Acker & Harrington, of Chicago, for appellee.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

Plaintiff suffered extensive injuries following an explosion at Lindy's Chili Parlor. Plaintiff filed a complaint alleging negligence against 5401 S.P., Inc., a corporation doing business as Lindy's Chili Parlor (hereafter, the corporation), and against Michael McClory, a part owner of the corporation and bartender at Lindy's. Following a trial, the jury returned a verdict in favor of plaintiff, awarding $861,111.23 in damages, reduced by 10% to $782,200 to reflect plaintiff's comparative negligence. Defendants then brought a motion for judgment notwithstanding the verdict, which the trial court denied. Defendants appeal, arguing that the trial court erred by: (1) not entering judgment notwithstanding the verdict because plaintiff failed to establish either a duty owed by defendants or that defendants' acts proximately caused plaintiff's injuries; (2) allowing evidence and argu-

ment related to alcohol consumption and intoxication; and (3) refusing to instruct the jury to apportion negligence among plaintiff, the corporation, McClory, and "Person X," an unidentified person who was not a party to the lawsuit. For the following reasons, we affirm.

## BACKGROUND

Plaintiff testified at trial that he was employed as a locomotive engineer for the Norfolk and Southern Railroad Corporation on the date of the accident. Plaintiff's position required him to travel by freight train from Fort Wayne, Indiana, to Chicago, Illinois. Upon plaintiff's arrival in Chicago, a company bus would transport plaintiff from the train yard to the Rolling Wheels Motel. Once plaintiff arrived at the Rolling Wheels Motel, he would then contact a company dispatcher who would inform plaintiff of the time of plaintiff's expected return to Fort Wayne.

On June 13, 1996, plaintiff arrived in Chicago and was transported to the Rolling Wheels Motel. As was his custom, plaintiff walked from the motel to Lindy's Chili Parlor. Lindy's is divided into two sections with a family-style restaurant on one side and a bar on the other side. Plaintiff testified that he arrived at Lindy's and entered the bar area around 11:30 a.m. Plaintiff walked to a barstool near the front of the bar where he remained standing until the occurrence took place. Plaintiff's coworker, Ron "Rondo" Martineck, and Rondo's brother Bobby arrived around 2:30 p.m. Rondo stood to plaintiff's right. Bobby, confined to a wheelchair, was also located to plaintiff's right. James Trahin, Jr., another of plaintiff's coworkers, arrived sometime later and stood to plaintiff's left.

Plaintiff further testified that Mike McClory, a bartender and co-owner of Lindy's, was not present when plaintiff first arrived. McClory arrived later, entering through a door at the back of the bar. McClory spoke with different people as he proceeded down the length of the bar, finally approaching plaintiff. According to plaintiff, when McClory reached the place where plaintiff was standing, McClory placed an object, which plaintiff later identified as an "M-80," on the bar in front of plaintiff and said, "Here, you can have this." Plaintiff testified:

> "I looked down at it, and I don't do well in the—it's a little darker there. I don't have my glasses with me. I looked at it. I couldn't exactly tell what it was, so I picked it up and held it up to the light, which the front is—has a lot of windows, has more light coming in. So I held it up to see what—what exactly that was.
>
> * * *
>
> As I was looking at it, I seen a hand come with a lit lighter and light the fuse."

Plaintiff testified that the hand that lit the fuse came from the left front of plaintiff, but he did not know to whom the hand belonged. Plaintiff, shocked that someone had lit the fuse, ran toward the front door of the bar while trying to extinguish the fuse of the M-80 on his pant leg. Plaintiff exited through an interior door, opened an exterior door, and "tried to underhand pitch the M-80 out up against the building by the sidewalk." The M-80, however, exploded before plaintiff could release it, causing serious injuries to his hand, stomach and thigh. Plaintiff testified that he did not light the M-80 and did not know who lit it. Plaintiff had some experience with M-80s at least 10 to 15 years prior to the incident at Lindy's and knew an M-80 explodes about five seconds after the wick is lit and has a "pretty powerful explosion."

Plaintiff's counsel called McClory as an adverse witness. McClory testified that he arrived at Lindy's around 4 p.m. on the day of the explosion and observed a group of patrons near the back of the bar passing an object back and forth. According to McClory, someone in the group at the back of the bar either dropped the object or placed it on the bar and McClory picked the object up. McClory initially testified that he was not sure whether the object was an explosive device, but he admitted that he "had an idea that it may be some type of firework." McClory also admitted that during his deposition he had testified that he remembered "seeing an M-80" five minutes prior to the explosion. According to McClory, the device was "red, about an inch or more high, with a wick" and was one-half inch in diameter. McClory testified that he picked up the explosive and asked "who it belonged to." McClory believed that someone had gestured in the direction of plaintiff, so McClory placed the explosive on the bar in front of plaintiff.

Plaintiff's counsel then questioned McClory regarding alcohol consumption as follows:

"Q. You knew that people were drinking in the bar, correct?
A. Yes, correct.
Q. You knew that people were smoking in the bar, correct?
A. Correct.
Q. You know that patrons often consume a little bit too much alcohol in the bar; is that correct?"

Defense counsel objected and moved for a mistrial, arguing that there was no supporting evidence of intoxication. Plaintiff's counsel argued that the testimony he sought to elicit "goes to the foreseeability and the knowledge of the defendant of placing an explosive device on a bar where he knows people are drinking and sometimes drink too much." The trial judge overruled defense counsel's objection

and denied the motion for a mistrial. McClory then further testified as follows:

"A. I know that it does happen from time to time, sure.

Q. And you know that it does happen at Lindy's Chili Parlor, correct?

A. To the best of my ability, I try not to allow that to happen.

Q. But prior to June 13, 1996, there are occasions where you have observed people consuming more alcohol than they should?

A. If I observe anybody that doesn't look like they should be drinking, they are asked to leave.

Q. Have you on occasion, though, seen people drinking where you have had to ask them to leave?

A. Correct.

Q. And you don't know how much people had been drinking before you arrived on June 13th?

A. Positively not."

Upon cross-examination by defense counsel, McClory testified that, having just arrived, he had no way of knowing whether anyone in Lindy's was intoxicated at the time of the occurrence and that, from his experience, he would not expect to see people intoxicated at Lindy's at 4:30 in the afternoon. Finally, McClory testified that "the bar is, for the most part, pretty dimly lit."

Plaintiff next called James Trahin as a witness. Trahin was employed as a dispatcher for Norfolk Southern Railroad Corporation at the time of the occurrence. Trahin testified that he arrived at Lindy's between 3 and 4 p.m. and joined plaintiff, "Rondo" and Bobby at the bar. Trahin ordered some food from McClory. While waiting for his order, Trahin saw McClory reach underneath the bar, grab what turned out to be the explosive, and bring it to the end of the bar where Trahin and plaintiff stood. According to Trahin, plaintiff neither asked nor gestured to McClory to place the explosive on the bar.

Trahin testified that the explosive was "about five inches tall. When it was put on the bar it was standing on end, circular." Trahin commented that the explosive "looked like a candle, had a wick off the top. It's red with like a clear wax in the middle of it where the wick was." Trahin was watching McClory to see whether he was bringing Trahin's food order when Trahin heard the fizzling of the lit wick. Trahin testified that he had left his lighter and cigarettes on the bar but could not find the lighter when he left after the explosion. Plaintiff's counsel asked if Trahin had ever seen intoxicated persons in Lindy's bar. Defendants' objection to this question was sustained.

Following the close of evidence, defendants moved for a directed verdict arguing that: (1) any negligence by defendants was a condition

rather than a cause of plaintiff's injuries; (2) the lighting of the wick was an intervening cause of plaintiff's injuries; and (3) plaintiff failed to prove that McClory provided the firecracker. The trial court denied the motion for directed verdict.

Plaintiff was permitted to reopen his case and call Rigoberto Gonzalez as a witness. Gonzalez testified that he had seen an explosive device being passed around by patrons at Lindy's on June 12, 1996, the day before plaintiff was injured. The explosive Gonzalez observed was "red, about one inch and a half diameter. It was like a quarter size." Gonzalez did not know whether this was the same explosive that injured plaintiff on June 13.

The parties again rested. In closing argument, plaintiff's counsel made the following comments:

"Michael McClory *** is the one who created the dangerous condition. He took an illegal explosive and he placed it on the bar. He could have removed it as soon as he picked it up. He could have stored it somewhere where no one had access to it. He could have called the police. He could have done any number of things other than place it on the bar so that people who were smoking and drinking had access to it.

* * *

In our experience in life, we know that bars can be dangerous places. We know that people who have been drinking can do silly things. We know that bars are not appropriate places for explosives.

* * *

Mr. McClory during his testimony admitted, reluctantly, that people sometimes drink too much in a bar. We all know that. People sometimes drink—"

This last comment drew an objection from defense counsel, which the trial court sustained. Plaintiff's counsel concluded:

"No reasonable person would walk into a restaurant or bar if they knew that there were people in there passing around explosives. No reasonable person would walk into a restaurant or a bar if they knew that there were explosives being handled by people who were smoking and drinking. No reasonable person would bring their children into an ice cream parlor if they knew that adjacent to that ice cream parlor people were smoking, drinking, and passing around high-powered explosives."

In his rebuttal argument, plaintiff's counsel further argued that there was "nothing to explain why [McClory] put [the explosive] on the bar in an area where people had been drinking and smoking even though he knew and even though he admitted, reluctantly, that people in that bar occasionally drink too much." Defense counsel objected: "Objection, your Honor—No. Objection to Counsel's own testimony

about that." The trial court sustained this objection and instructed the jury as follows:

> "Ladies and gentlemen, what the attorneys say is not [sic] argument. It's not to be taken as evidence. If any statement or remark by an attorney has no basis in the evidence, then you should disregard that statement, argument or remark."

Plaintiff tendered a jury instruction and accompanying verdict forms which required the jury to determine the percentage of negligence attributable to plaintiff, assuming that 100% represented "the total combined negligence of all persons whose negligence proximately contributed to the plaintiff's injuries and damages, including" plaintiff, McClory and the corporation. Defendants tendered a jury instruction and accompanying verdict forms which would have required the jury to determine the percentage of negligence attributable to: (1) plaintiff; (2) the corporation; (3) McClory; and (4) "Person X," the unidentified individual who lit the fuse. The instruction tendered by defendants was refused and the instruction tendered by plaintiff was submitted to the jury.

The jury returned a verdict in favor of plaintiff in the amount of $869,111.23. The jury found plaintiff 10% comparatively negligent and reduced the damage award to $782,200.11. Defendants moved for judgment notwithstanding the verdict, arguing that plaintiff failed to establish proximate cause and failed to establish that defendants owed him a duty. Defendants also moved for a new trial, arguing that: (1) the jury's verdict was against the manifest weight of the evidence; (2) the admission of evidence relating to alcohol consumption was prejudicial error; and (3) the trial court erred in refusing defendants' tendered jury instruction. The motions were denied and defendants now appeal.

## ANALYSIS

### I. Judgment Notwithstanding the Verdict

■ Defendants first argue that the trial court erred in denying their motion for judgment notwithstanding the verdict. Judgment notwithstanding the verdict is properly granted where all of the evidence, viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). We review decisions on motions for judgment notwithstanding the verdict *de novo. McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999). Defendants argue that they were entitled to judgment notwithstanding the verdict because plaintiffs could not establish either the existence of a duty or that defendants' conduct proximately caused plaintiff's injury. Each of

these arguments is premised on the contention that the injury to plaintiff was not reasonably foreseeable.

■ In addressing defendants' arguments, we are mindful that "the case law is less than perfectly lucid or consistent in its treatment of the densely intertwined ideas of duty, proximate causation, and reasonable foreseeability." *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 41 (1997).

> "Although 'reasonable foreseeability' is crucial to both duty and proximate cause, courts must take care to keep duty and proximate cause analytically independent by differentiating between 'two distinct problems in negligence theory—the unforeseen plaintiff problem and the problem of the foreseeable injury resulting from unforeseen means.' " *Gay*, 288 Ill. App. 3d at 41, quoting *Nelson v. Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 660 (1984).

Thus, a finding that a defendant owed a duty to a plaintiff depends on the reasonable foreseeability of *an* injury to *the particular plaintiff.* *Gay*, 288 Ill. App. 3d at 40. By contrast, a finding that a defendant's conduct proximately caused a plaintiff's injury depends on the reasonable foreseeability of the *type* of injury sustained by the plaintiff. *Gay*, 288 Ill. App. 3d at 43. With these principles in mind, we consider defendants' arguments.

## A. Duty

■ Where a plaintiff obtains a verdict against a defendant based on negligence, judgment notwithstanding the verdict is required if the defendant did not owe the plaintiff a duty. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). Whether a duty exists is a question of law. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000). To determine whether a duty exists, the court must consider the following factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on defendant. *Pullia v. Builders Square, Inc.*, 265 Ill. App. 3d 933, 936-37 (1994). Finally, the existence of a duty turns in large part on public policy considerations. *Pullia*, 265 Ill. App. 3d at 941.

■ Defendants argue that they owed no duty to protect plaintiff in the instant case because ordinarily a possessor of land has no duty to protect lawful entrants from the criminal acts of third parties (*Hills*, 195 Ill. 2d at 242). In Illinois, a possessor of land has a duty to protect entrants from criminal attacks only where: (1) the landowner and entrant stand in a special relationship to one another; and (2) the criminal attack was reasonably foreseeable. *Hills*, 195 Ill. 2d at 243.

■ In their brief, defendants argue that the "person who lit the M-80 inside Lindy's committed assault and battery. [Citation.] Assault and battery with an explosive device is statutory [*sic*] defined as

heinous battery." Section 12—3(a) of the Criminal Code of 1961 (Criminal Code) provides:

> "A person commits battery if he *intentionally* or *knowingly* without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Emphasis added.) 720 ILCS 5/12—3(a) (West 1996).

Section 12—4.1(a) of the Criminal Code provides, in relevant part:

> "A person who, in committing a battery, *knowingly* causes severe and permanent disability, great bodily harm or disfigurement by means of *** a bomb or explosive compound commits heinous battery." (Emphasis added.) 720 ILCS 5/12—4.1(a) (West 2000).

Defendants further argue that lighting the M-80 inside Lindy's was a "flagrant violation of the Fireworks Use Act." Section 2 of the Fireworks Use Act provides in relevant part that "it shall be unlawful for any person *** to *knowingly* possess, *** use or explode any fireworks." (Emphasis added.) 425 ILCS 35/2 (West 1996). Unlawful use or explosion of fireworks is a Class B misdemeanor. 425 ILCS 35/5(a) (West 1996). Possession of fireworks may be a petty offense, a Class B misdemeanor, or a Class A misdemeanor, depending upon the weight of the fireworks. 425 ILCS 35/5(b) (West 1996). To establish either a battery or a heinous battery, the plain language of the Criminal Code explicitly requires proof of the actor's knowledge and intent. 720 ILCS 5/12—3(a) (West 1996); 720 ILCS 5/12—4.1(a) (West 2000). Similarly, section 2 of the Fireworks Use Act (425 ILCS 35/2 (West 1996)) explicitly requires proof of the actor's knowledge.

■ Defendants argue that the level of concentration required to match up the flame of a lighter to the wick of the explosive is sufficient to establish intent. Although the evidence may in fact support a finding that the unidentified individual intentionally lit the wick, no evidence was presented that the unidentified individual knew or should have known that the object held by plaintiff was an explosive device. Indeed, Trahin testified that the explosive looked like a candle with wax around the wick. Plaintiff testified that, because it was dark in the bar, he could not initially tell what the object was and had to hold it up to the light to get a better look. Even McClory initially testified that he could not tell exactly what the object was. In light of this evidence, any conclusion that Person X knew that the object was an explosive would be pure speculation. Consequently, the evidence does not support a finding that Person X knew that lighting the wick would cause "severe and permanent disability, great bodily harm or disfigure-

ment by means of *** [an] explosive compound" (720 ILCS 5/12—4.1(a) (West 2000)).[1]

■ Defendants also argue that Person X violated section 15—20—220 of the Chicago Municipal Code, which provides in relevant part that "[n]o person shall have, keep, store, use, manufacture, assemble, mix, sell, handle or transport any fireworks." Chicago Municipal Code § 15—20—220 (1990). Section 15—20—220 does not expressly require proof of a mental state to establish a violation of the ordinance. At the time of the incident, the Chicago Municipal Code did not impose any penalty for violation of this ordinance. Penalties were not added until 1999. See Journal of the Chicago City Council, at 5376-77 (June 9, 1999) ("setting forth penalties for possession, use, sale or manufacture of illegal fireworks" by *adding* section 15—20—220). The violation of a municipal ordinance is not a criminal act. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 11 (2001). While there is clear precedent limiting a landowner's duty to protect from the *criminal* acts of a third party (*Hills*, 195 Ill. 2d at 242), we decline to extend this precedent to limit a defendant's liability where the violation of a nonpenal, absolute liability ordinance is alleged to be an intervening cause of the plaintiff's injuries. Because the evidence does not establish a criminal act, the precedent limiting a landowner's duty to protect from criminal acts is inapplicable under the facts of this case.

■ Though defendants argue that McClory did not know that the object was an explosive, defendants concede that "the evidence went both ways on this point." Viewing the evidence in the light most favorable to plaintiff, our analysis turns on whether McClory, knowing that he was handing an explosive to plaintiff, could reasonably have foreseen that plaintiff would be injured. An incident is not foreseeable simply because it might conceivably occur; rather, it must be objectively reasonable to expect. *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000). In the instant case, we find that it is objectively reasonable to expect that, in a dimly lit bar, someone might attempt to light an object which apparently looked like a candle. Because the evidence supports a finding that McClory knew the device was an explosive, it was both foreseeable and likely that plaintiff would sustain serious injury when McClory introduced the explosive into an environment where it was reasonably foreseeable that the explosive would be lit.

---

[1]We further note that the phrase "bomb or explosive compound" was not added to section 4.1(a) until July 15, 1999. Pub. Act 91—121, § 5, eff. July 15, 1999. Because this language was not part of the statute in effect at the time of the occurrence, Person X would not have been guilty of a heinous battery for this additional reason.

Defendants do not contend that the burden of guarding against injury would have been great. Indeed, the likelihood of injury could easily have been avoided had McClory simply kept the explosive behind the bar where it would have been inaccessible to customers. Furthermore, we perceive and defendants suggest no adverse consequences that might result should we impose this minimal burden on defendants. Consideration of the four relevant factors (see *Pullia*, 265 Ill. App. 3d at 937) favors the imposition of a duty. Therefore, particularly in light of the gravity of the injury to be expected under these circumstances, we hold that public policy requires the imposition of a duty upon defendants. See *Pullia*, 265 Ill. App. 3d at 941 (duty turns in large part on public policy considerations). Because plaintiff established the existence of a duty, defendants' argument that they were entitled to judgment notwithstanding the verdict fails.

## B. Proximate Cause

■ Defendants next argue that judgment notwithstanding the verdict was required because plaintiff failed to establish that defendants' negligence proximately caused plaintiff's injuries. Proximate cause consists of two distinct requirements: cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). Cause in fact exists where the negligence at issue is a material and substantial element in bringing about the injury. *Galman*, 188 Ill. 2d at 258. If the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Galman*, 188 Ill. 2d at 257.

Legal cause exists when the cause is of a type a reasonable person would see as likely to result from his conduct. *Galman*, 188 Ill. 2d at 258. The test that should be applied where injury results from the intervening act of a third party is whether the defendant reasonably might have anticipated the intervening efficient cause as a natural and probable result of the defendant's own negligence. *Galman*, 188 Ill. 2d at 259. Because proximate cause is ordinarily a question of fact, judgment notwithstanding the verdict cannot be granted on that basis unless all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Galman*, 188 Ill. 2d at 257.

■ Defendants argue that McClory's conduct in giving the explosive to plaintiff was not a cause of plaintiff's injury but merely created a condition that made plaintiff's injury possible. We disagree. We find

the test enunciated in *Galman* dispositive. Whether a defendant's conduct was a cause of injury or merely a condition that made the injury possible turns on whether the defendant's conduct was a material and substantial element in bringing about the injury. *Galman*, 188 Ill. 2d at 259. A defendant's conduct is a material and substantial element in bringing about an injury if, absent that conduct, the injury would not have occurred. *Galman*, 188 Ill. 2d at 258. Absent McClory's conduct in providing the explosive, the serious injuries sustained by plaintiff would not have occurred. Consequently, McClory's conduct was a cause in fact of plaintiff's injuries and not merely a condition which made those injuries possible.

Defendants further argue that McClory's conduct was not the proximate cause of plaintiff's injuries because the lighting of the fuse by Person X constitutes an intervening efficient cause. Under such circumstances, the test applied to determine whether a defendant's conduct proximately caused a plaintiff's injuries turns on whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his or her conduct. *Galman*, 188 Ill. 2d at 259. Uncontroverted evidence was presented that the bar was dimly lit and the explosive looked like a candle. Viewing the evidence in the light most favorable to plaintiff, we do not find that the evidence as to proximate cause so overwhelmingly favors defendants that the jury's verdict cannot stand. *Pedrick*, 37 Ill. 2d at 510; *Galman*, 188 Ill. 2d at 257. We affirm the denial of defendants' motion for judgment notwithstanding the verdict.

## II. Alcohol Consumption

■ Defendants next argue that the trial court erred in permitting plaintiff to introduce evidence and argument regarding alcohol consumption by the bar patrons absent a proper foundation for intoxication. At trial, plaintiff's counsel was permitted, over defendants' objection, to elicit testimony that "from time to time" patrons "consume a little bit too much alcohol" at Lindy's and that on prior occasions McClory had asked patrons of Lindy's to leave because those patrons were "consuming more alcohol than they should." The admission of evidence is within the sound discretion of the trial court, and a court of review will not reverse unless that discretion was clearly abused. *McGrew v. Pearlman*, 304 Ill. App. 3d 697, 703 (1999). Further, improper closing argument constitutes reversible error only "if [it was] so prejudicial as to deprive a party of a fair trial." *Watkins v. American Service Insurance Co.*, 260 Ill. App. 3d 1054, 1067 (1994).

■ Evidence of intoxication is highly probative in a negligence case; however, such evidence is also extremely prejudicial. *McGrew*,

304 Ill. App. 3d at 703. Illinois courts have thus consistently held that evidence of alcohol consumption is inadmissible absent a showing of intoxication resulting in impairment of mental or physical abilities and a corresponding diminution in the ability to act with ordinary care. *Shore v. Turman*, 63 Ill. App. 2d 315, 322-23 (1965); *Kitten v. Stodden*, 76 Ill. App. 2d 177, 180-82 (1966). *McGrew*, 304 Ill. App. 3d at 704. This is so because:

> " 'Drinking, standing alone, cannot be equated with intoxication nor can the use of alcoholic liquor, standing alone, characterize a person as intoxicated.'
>
> To this we would add that neither does drinking, nor evidence of drinking on one occasion, from which intoxication might reasonably be inferred, characterize a person, in either fact or law, as 'a drunk.' " *Kitten*, 76 Ill. App. 2d at 180, quoting *Shore*, 63 Ill. App. 2d at 323.

Intoxicating beverages affect different persons in different ways and some persons would be intoxicated by the consumption of a quantity of alcohol that might have no effect on another person. *Kitten*, 76 Ill. App. 2d at 181. Supporting evidence of intoxication is likewise required where the evidence of alcohol consumption is introduced to establish that a third person, not a party to the litigation, was responsible for a plaintiff's injuries. *Ballard v. Jones*, 21 Ill. App. 3d 496, 501 (1974).

Plaintiff correctly notes that none of the cases requiring supporting evidence of intoxication address the admissibility of evidence of alcohol consumption introduced solely to establish foreseeability. Instead, plaintiff argues that the cases requiring supporting evidence of intoxication are limited to situations where evidence of alcohol consumption is introduced to establish a failure to exercise due care. Consequently, plaintiff argues that supporting evidence of intoxication should not be required where evidence of alcohol consumption is presented solely to establish foreseeability.

We believe the rationale underlying the rule requiring supporting evidence of intoxication applies where evidence related to alcohol is introduced solely to establish foreseeability. Certainly, evidence of *intoxication* may be relevant to the issue of foreseeability in a negligence case. See *Cravens v. Inman*, 223 Ill. App. 3d 1059, 1078 (1991). Indeed, by arguing that "it would not be reasonable to anticipate" that a patron would light the explosive *"unless* [the patron] was intoxicated" (emphasis added), defendants implicitly concede that the lighting of the explosive would have been reasonably foreseeable if patrons were intoxicated. Nonetheless, because "[d]rinking, standing alone, cannot be equated with intoxication" (*Shore*, 63 Ill. App. 2d at 323), the mere fact that patrons of Lindy's were drinking at the time

of the occurrence does not, without more, render the lighting of the explosive any more or less foreseeable. A patron who was drinking would be no more likely to light the explosive than a patron who did not imbibe unless the drinking patron's mental faculties were somehow impaired by the consumption of alcohol. We therefore decline plaintiff's invitation to carve out an exception to the rule requiring supporting evidence of intoxication where evidence of alcohol consumption is introduced solely to establish foreseeability.

We note, however, that defendants failed to object to testimony that patrons of Lindy's were "drinking in the bar" at the time of the occurrence. Defendants also failed to object to repeated comment by plaintiff's counsel during closing argument that patrons of Lindy's were "smoking and drinking." Defendants' objections were instead limited to testimony and argument suggesting that patrons of Lindy's had in the past been asked to leave when "consuming more alcohol than they should," that "from time to time" patrons of Lindy's "consume a little bit too much alcohol" and that people in bars "sometimes drink too much." By failing to object, defendants have waived any argument that evidence and argument regarding the mere consumption of alcohol at Lindy's on the date of the incident was inadmissible. *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 467 (2001).

McClory was permitted to testify, over defendants' objection, that patrons of Lindy's "from time to time" consume "a little bit too much alcohol." In addressing the admissibility of such testimony, we note that plaintiff did in fact present some supporting evidence regarding the intoxication of patrons at Lindy's. Specifically, McClory testified that, on previous occasions, he had asked patrons of Lindy's to leave because they were "consuming more alcohol than they should." McClory's opinion that such patrons were "consuming more *** than they should" provides sufficient supporting evidence of the intoxication of Lindy's patrons on those prior occasions. See *Chubb/Home Insurance Cos. v. Outboard Marine Corp.*, 238 Ill. App. 3d 558, 570 (1992) (evidence of intoxication can be shown through opinion testimony of person who observed the subject's intoxication). Case law supports the admission of evidence that patrons of Lindy's "from time to time" consume "a little bit too much alcohol" and therefore admission of such evidence was not an abuse of discretion.

Defendants also timely objected to comments by plaintiff's counsel during closing argument that "people sometimes drink too much in a bar" and that patrons of Lindy's "occasionally drink too much." Closing argument which is not supported by facts in evidence is improper. *Watkins*, 260 Ill. App. 3d at 1067. Argument regarding intoxication is likewise impermissible absent supporting evidence of

intoxication. See *McWethy v. Lee*, 1 Ill. App. 3d 80, 85 (1971). The trial court sustained both of defendants' objections, instructing the jury each time that what attorneys say in argument is not to be considered evidence. In addition, the trial court instructed the jury following the latter objection that, "[i]f any statement or remark by an attorney has no basis in the evidence, then you should disregard that statement, argument or remark." Defendants argue that this second instruction actually compounded the prejudicial effect of plaintiff's argument by inviting the jury to consider the "improperly admitted" evidence regarding the intoxication of Lindy's patrons on prior occasions. This court having already concluded that the evidence in question was properly admitted, we reject defendants contention that the trial court's instruction was prejudicial.

   ■ Relying on the court's holdings in *McWethy*, 1 Ill. App. 3d at 85, and *Coleman v. Williams*, 42 Ill. App. 3d 612, 618 (1976), defendants argue that reversal is warranted because plaintiff argued by innuendo that Person X was intoxicated and that McClory knew or should have known of Person X's intoxication. *McWethy* and *Coleman* stand for the proposition that counsel may not raise a suggestion of intoxication by innuendo absent supporting evidence of intoxication. *McWethy*, 1 Ill. App. 3d at 85; *Coleman*, 42 Ill. App. 3d at 618. The case before us is readily distinguishable from both *McWethy* and *Coleman*.

   In *McWethy*, plaintiff was injured during a collision while a passenger in a car driven by defendant's decedent. *McWethy*, 1 Ill. App. 3d at 82-83. In his opening statement, defense counsel indicated that plaintiff and the other occupants of the car were drinking beer; however, defense counsel presented no evidence that anyone was intoxicated. *McWethy*, 1 Ill. App. 3d at 83. Plaintiff's counsel in *McWethy* "persistently and consistently objected" to more than 50 questions regarding the "presence of beer" and objected to 22 references to beer during closing argument. *McWethy*, 1 Ill. App. 3d at 85. In contrast, defense counsel in the case before us objected to only two questions regarding intoxication (one of which was sustained, the other properly denied) and to only two references to intoxication during closing argument (*both* of which were sustained). Unlike *McWethy*, the case before us involves neither pervasive references to inadmissible evidence nor persistent protests by the objecting party. *McWethy* thus does not support reversal in the instant case.

   ■ In *Coleman*, the plaintiff was struck by the defendant's automobile while walking along the shoulder of a road. The appellate court reversed a judgment in favor of the defendant, noting that "defense counsel, by innuendo, planted in the minds of the jury the

possibility, if not the probability, that the plaintiff was intoxicated" at the time of the occurrence. *Coleman*, 42 Ill. App. 3d at 617. The defendant in *Coleman* presented evidence that the plaintiff had spent several hours in two taverns on the afternoon and evening of the occurrence and, in closing argument, told the jury, "I think you are entitled to consider where [plaintiff] spent five of the last six hours that day before the occurrence took place, in the V&J [Tap] and Victory [Tap]." *Coleman*, 42 Ill. App. 3d at 616. In contrast, none of the questions or comments at issue in the instant case indicates that Person X spent any length of time at Lindy's prior to the accident. Further, while the court in *Coleman* found that the activities of the plaintiff prior to the occurrence were not probative of any issue in the case (*Coleman*, 42 Ill. App. 3d at 617-18), the fact that McClory knew that patrons of Lindy's sometimes consume too much alcohol was probative of the foreseeability of harm in the instant case. Finally, in contrast to both *McWethy* and *Coleman*, none of the evidence and argument at issue appears to suggest or imply that any particular individual (including Person X) was intoxicated at the time of the occurrence. We therefore find no stealth innuendo in the instant case.

However, even were we to find that the trial court erred in admitting the testimony and argument at issue, such error would not require reversal under the facts of this case. Error in the admission of evidence regarding alcohol consumption is grounds for reversal only if such error prejudices the jury's verdict. *Benuska v. Dahl*, 87 Ill. App. 3d 911, 913 (1980). Similarly, improper closing argument constitutes reversible error only "if so prejudicial as to deprive a party of a fair trial." *Watkins*, 260 Ill. App. 3d at 1067. It cannot be argued that the jury in the instant case was anything other than fully aware that the accident occurred in a bar where patrons were consuming alcohol. Even if testimony and argument that patrons of Lindy's and other bars sometimes drink too much was erroneously admitted, the fact that patrons who are drinking in bars sometimes become intoxicated is a matter of common knowledge. *Cf. Bielaga v. Mozdzeniak*, 328 Ill. App. 3d 291, 298 (2002) (where "activities of the parties occur in a bar over several hours ***[,] the jury would not be so naive as to believe that we are dealing with teetotalers or prohibitionists"). Defendants were not prejudiced by any alleged error. *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1, 14 (1988) (defendants not prejudiced by admission of evidence as to matter of common knowledge); *Outboard Marine Corp.*, 238 Ill. App. 3d at 573 (evidence of beer on boat not prejudicial to defendant where fact that alcohol could be kept on a boat for consumption by its passengers was arguably matter of common knowledge).

## III. Jury Instructions

Finally, defendants argue that the trial court committed reversible error by refusing to submit their tendered jury instruction, which would have required the jury to apportion negligence among plaintiff, the corporation, McClory, and Person X. Generally, the decision as to which jury instructions will be given is within the sound discretion of the trial court. *Truszewski v. Outboard Motor Marine Corp.*, 292 Ill. App. 3d 558, 560 (1997). When available, the Illinois Pattern Jury Instruction should be given, unless the court determines that it does not accurately state the law. *Truszewski*, 292 Ill. App. 3d at 560. An instruction is justified if it is supported by some evidence in the record. *Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 56 (2000).

Defendants cite to *Bofman v. Material Service Corp.*, 125 Ill. App. 3d 1053 (1984), in support of their claim that a jury must consider and apportion fault among nonparties for whom the evidence supports a finding of negligence or other fault which contributed to cause plaintiff's injury. The jury in *Bofman* was instructed to consider the negligence of "all other persons" in determining the plaintiffs' proportionate share of negligence. The appellate court held that this instruction was proper, concluding that "[c]onsideration of the negligence of both parties and nonparties to an action is essential for determining liability commensurate with degree of total fault." *Bofman*, 125 Ill. App. 3d at 1064. The *Bofman* court, however, also explained that "[t]he purpose of considering the liability of nonparty tortfeasors is not *** to limit defendant's share of responsibility, but to determine the extent of plaintiff's responsibility for his own injuries." *Bofman*, 125 Ill. App. 3d at 1064.

The rule in *Bofman* notwithstanding, defendants were not entitled to have the jury consider the negligence of Person X based on the record in the instant case. An instruction is justified only if it is supported by some evidence in the record. *Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 56 (2000). As noted above, no evidence was presented that Person X knew that the object which he or she lit was an explosive. Instead, both parties presented evidence that the object was *not* readily identifiable as an explosive. Trahin testified that the object looked like a candle. McClory testified that he could not tell exactly what the object was. Plaintiff, who was familiar with M-80s, testified that he had to hold the object up to light to identify "what exactly it was." The risk of harm to plaintiff would not have been reasonably foreseeable to Person X unless Person X had reason to know the object was an explosive. Because there is nothing to suggest that Person X knew or should have known the object was an explosive, injury to plaintiff was not reasonably foreseeable to Person X. In the

absence of such foreseeability, Person X owed plaintiff no duty and therefore cannot have been guilty of negligence. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239-40 (1999). An instruction requiring the jury to consider Person X's negligence was not supported by evidence in the record and thus would have been improper. See *Demos*, 317 Ill. App. 3d at 56.

## CONCLUSION

In light of the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

McNULTY and TULLY, JJ., concur.